[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
By petition filed November 21, 1990 the Commissioner of the Department of Children and Youth Services ("DCYS") seeks the termination of the parental rights of Laverne B. and Louis McC. in and to their son Michael McC. The petition was brought pursuant to General Statutes, Section 17-43a (now Section 17a-112).
The petitioner alleges that the child has been abandoned by his mother and father in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; that the child has been found in a prior proceeding to have been neglected or uncared for and that mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, they could assume a responsible position in the life of the child; that the child has been denied by reason of act or acts of commission by mother the care, guidance or control necessary for his physical, educational, moral or emotional well-being; further, that there is no on-going parent child relationship between Michael and his mother, and between Michael and his father, which means the relationship which ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and that to allow further time for the establishment of such relationship between either parent and the child would be detrimental to the child's best interests; and finally, that the above-cited reasons for termination had existed for not less than one year prior to filing.
 II
Denials were entered on behalf of mother on December 19, 1990. Father received notice by publication of the December 19 plea hearing and failed to appear. At that time, a child custody evaluation was ordered and the matter continued for trial. Trial began on March 4, 1991 and was concluded April 3, 1991.
 III
The child, Michael McC., was born on July 23, 1988. He first came to the attention of the court in August 1989 when an Order of Temporary Custody ("OTC") was issued ex parte. By agreement Michael was adjudicated neglected on September 27, 1989 and committed to the care and custody of the Commissioner. That commitment was extended for a further 18 months on February 27, 1991. The child has lived with his foster mother since August, 1989. CT Page 4712
 IV
The child has been in foster care since August, 1989. Since that time mother has visited with Michael once, on January 4, 1991. Foster mother reports mother made one telephone call to the foster home, sometime in July, 1989. Since the child's commitment in September 1989, father has had no contact with his son. The petitioner has proved by clear and convincing evidence that mother and father have abandoned Michael, in the sense that both parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of this child.
By clear and convincing evidence the child, as noted, as found on September 27, 1989 to have been neglected. At that time mother entered into court-ordered expectations; these included consistent visitation participation in drug evaluation (screening). Compliance with court-ordered expectations is strong evidence of personal rehabilitation of a parent. In the instant case, mother failed to meet expectations. On July 26, 1990 mother entered into a service agreement, the terms of which included that she begin visitation twice per month with Michael, increasing visits to weekly during the second month; and enroll in a drug program. At the time of signing the agreement it was explained that her failure to comply with the terms agreed upon could result in the filing of a petition to terminate her parental rights. Mother utterly failed to carry out the terms of the service agreement. The petitioner has established by clear and convincing evidence that mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time considering the age and needs of Michael she could assume a responsible position in his life.
On February 21, 1991, Anthony F. Campagna, Ph.D., a clinical psychologist, conducted, pursuant to court order, an evaluation of the relationship between Michael and Laverne B. He testified that there was no evidence of any bond between Michael and his mother. His report states that Michael "showed no sign of recognition or interest in his mother." Significantly, mother "made no attempt to interact or even respond physically to his presence." As indicated, supra, father has had no contact with the child since September, 1989. The court finds that the petitioner has proven by clear and convincing evidence that there is no on-going parent-child relationship between this child and his mother, or between the child and his father, which we define as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and CT Page 4713 educational needs of the child, and that to allow further time for the establishment or re-establishment of such parent-child relationships would be detrimental to the best interests of the child.
The court also finds, by clear and convincing evidence, that the statutory grounds for termination, cited above, have existed for a period of not less than one year.
 V
The statutory grounds for termination having been established, the court makes the following findings, required by General Statutes, Section 45a-717 (h), all by clear and convincing evidence.
DCYS offered mother opportunities for regular visitation (as did foster mother). Although mother was never given a bus pass, as per the Expectations of September 27, 1989, she was offered transportation to and from visits and on one occasion was given $5.00 by the child's case worker for transportation. From February 1990, following the birth of a child to mother, the DCYS case worker assigned to Michael made repeated contacts with mother (some initiated by telephone by mother) including three home visits, encouraging mother to arrange to visit Michael.
The last home visit was on July 26, 1990, when as noted above, mother signed a service agreement, and was warned of the possibility that a TPR would be filed if mother failed to fulfill the terms of the agreement. At that visit, mother was again encouraged to visit Michael, the worker offering to help make arrangements for visitation if mother felt unable to do so herself. Mother had no contact with Michael until January, 1991.
Counsel for mother asserts mother "received no services." The record shows that mother was offered services but was unable or unwilling to avail herself of such services.
Mother, described by her attorney as "chronically depressed," as "overwhelmed" by homelessness, by the care of her other children, by the need to move to Meriden to care for her ill mother, without income, without transportation, was unable to initiate any effort to rehabilitate, Dr. Campagna testified to his belief that because of mother's long-standing psychological and emotional difficulties mother would be unlikely to make use of anything but the most superficial support; that providing her with external support would not address her "defensiveness" and "denial." In response to a CT Page 4714 question Campagna stated he could help mother "if she came in," highlighting the crux of mother's failure; she has been unable, over a prolonged period of time, to take the first step, any step, toward reunification. Father never contacted DCYS seeking services to facilitate reunification.
As to any court orders entered into and agreed upon by mother, and DCYS, mother entered into court ordered expectations on September 27, 1989 and has failed utterly to meet expectations.
As to the feelings and emotional ties of the child to his parents, the child has never known his father and can have no emotional ties and feelings toward father. The child was separated from mother when he was some 13 months old and has seen her twice since. He does not recognize her, and shows no affection for her. He has no positive feelings or emotional ties to his biological mother.
Michael has strong, positive emotional ties to Verline B., his foster mother, to whom he is strongly bonded. He calls her "Ma." She is his psychological mother, on whom he has depended for love, care and guidance for over half his young life.
Michael's date of birth being July 23, 1988, he is approximately 34 months old.
Father has made no effort to adjust his circumstances, conduct or conditions to make it in the best interest of the child to return him to father's home in the foreseeable future.
Mother, admittedly "overwhelmed" by various problems, has voiced her hope to have the child returned to her home but has done virtually nothing to adjust her circumstances, conduct or conditions to make that possible in the foreseeable future. Since the child was placed in foster care, mother made one call in July 1989, to arrange a visit which never eventuated. In January 1991, mother paid her only visit to Michael. Mother and father have made no other calls to the foster home to inquire about Michael, have supplied no financial support, no clothing, sent no gifts or cards on the child's birthdays or on holidays, nor has mother complied with court-ordered expectations designed to assist her in adjusting her circumstances, conduct or conditions so as to create the conditions to allow the return of Michael to mother's home.
There is no evidence that either parent has been prevented from maintaining a meaningful relationship with Michael by the unreasonable act or conduct of any person or agency While mother's economic circumstances were stated to have been poor, CT Page 4715 there was no evidence that these economic circumstances prevented mother from making the minimal contacts with DCYS which could have led to help in visitation and communication with Michael. The evidence supports the conclusion that mother's internal psychological problems, rather than her economic circumstances were such as to prevent her from maintaining a meaningful relationship with Michael.
 VI
Based on the evidence presented, the court finds, by clear and convincing evidence, that it is in the best interest of Michael McC. that the paternal rights of Laverne B. and Louis McC. be terminated. The child has strong, positive emotional ties to Verline B. his foster mother, who has provided competent, loving care for this child since he was 13 months old and who wishes to adopt him. He has no ties to his mother, who has in the year and a half since Michael's placement been unable to take the first step toward equipping herself to parent Michael. There is no reason to believe Laverne B. would be able to fulfill the role of parent for Michael in the foreseeable future. Louis McC. has played no role in Michael's life at least since the child's placement and there is no reason to believe he would do so in the future.
Accordingly, the parental rights of Laverne B. and Louis McC. in and to their son Michael McC. are terminated.
The Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for Michael's adoption and the Commissioner is to file a written report with the court within 90 days of this decision and thereafter as required by statute until adoption is accomplished.
 VII
Trial counsel for mother is appointed appellate counsel, should mother seek to take an appeal of this judgment. Should counsel decline to perfect such appeal because in her professional judgment it lacks merit, counsel is to notify the court promptly so as to allow the court to appoint a second attorney to review the record. Should such second attorney be appointed and decline to perfect an appeal, that attorney is to notify the court promptly, so that the clerk of the court can inform mother of her right to secure counsel for an appeal, who, if qualified, may be appointed by the court. The same assistance on appeal will be accorded to father if he seeks to appeal. CT Page 4716
JOHN T. DOWNEY, JUDGE